

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED

FEB 05 2016
2-5-16
JUDGE CHARLES R. NORGLE
U.S. District Court Judge

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 14 CR 287-2 |
| v. | Judge Charles R. Norgle |
| ROBERT D. LATTAS | |

## PLEA AGREEMENT

1.    This Plea Agreement between the United States Attorney for the Northern District of Illinois, ZACHARY T. FARDON, and defendant ROBERT D. LATTAS, and his attorney, EDWARD M. GENSON, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(A), as more fully set forth below. The parties to this Agreement have agreed upon the following:

### Charges in This Case

2.    The indictment in this case charges defendant with bank fraud, in violation of Title 18, United States Code, Section 1344 (Counts 1, 3-6 and 8-9), and making false statements to a financial institution, in violation of Title 18, United States Code, Section 1014 (Counts 2, 7 and 11)

3.    Defendant has read the charges against him contained in the indictment, and those charges have been fully explained to him by his attorney.

4.    Defendant fully understands the nature and elements of the crimes with which he has been charged.

1

## Charge to Which Defendant Is Pleading Guilty

5.     By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the following count of the indictment: Count One, which charges defendant with bank fraud, in violation of Title 18, United States Code, Section 1344.    In addition, as further provided below, defendant agrees to the entry of a forfeiture judgment.

## Factual Basis

6.     Defendant will plead guilty because he is in fact guilty of the charge contained in Count One of the indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt, and establish a basis for forfeiture of the property described elsewhere in this Plea Agreement and will be considered as stipulated conduct for purposes of the U.S. Sentencing Guidelines and defendant's sentencing before U.S. District Judge John W. Darrah in *United States v. Robert Lattas, et al.*, 13 CR 463:

Beginning not later than March 2007, and continuing through at least in or about July 2012, in the Northern District of Illinois, Eastern Division, and elsewhere, ROBERT D. LATTAS, Warren N. Barr III, Jeffrey A. Budzik, Asif A. Aslam, Leonardo V. Sanders, and James J. Carroll knowingly participated in a scheme to defraud financial institutions, namely, AmTrust Bank, Bank of America, First Tennessee Bank, JP Morgan Chase Bank, Wells Fargo, and others, and to obtain money and funds owned by and under the custody and control of financial

2

institutions by means of materially false and fraudulent pretenses, representations, and promises.

Specifically, LATTAS was a real estate attorney who was recruited by real estate developer Warren Barr to represent 13th & State LLC at closings for the sale of numerous condominium units at Vision on State, a high-rise residential complex at 1255 S. State Street in Chicago. 13th & State was a limited liability corporation created to facilitate the construction, development, and sale of the units at Vision on State. Barr was a member of 13th & State LLC, and 13th & State LLC was indebted to various lenders and investors.

The units at Vision on State were offered for sale beginning in approximately November 2004, during which time construction was ongoing. By the spring of 2007, multiple units remained for sale at Vision on State, and 13th & State LLC was having difficulty selling those units at prices that would allow the company to cover its costs and repay its loans. As a result, 13th & State LLC entered into an agreement with Sanders to sell the units to straw buyers recruited by Sanders.

LATTAS knew that Sanders's straw buyers were purchasing the units at inflated prices set by Barr, Sanders, and others. LATTAS, Barr, Carroll, Sanders, and others referred to the difference between the lower price that would allow 13th & State LLC to cover its costs, and the inflated price, as "the spread." From speaking with Barr and others, LATTAS knew that "the spread" was intended to provide Sanders with a large commission fee and also was intended to be used by

3

Sanders to benefit the straw buyers through means such as making the straw buyers' down payments, paying the straw buyers' homeowner's assessments, and supporting a guaranteed rental program on behalf of the straw buyers.

LATTAS knew that true information about the commissions, payments, and price of a condominium unit was material to the lenders' decisions to fund the mortgages. However, LATTAS agreed with Barr and others to represent 13th & State LLC at closings and to conceal the commissions and other payments to Sanders.

In and around January 2008, after Sanders failed to sell all of the remaining condominium units, Barr entered into an agreement with Aslam to sell the units to straw buyers recruited by Aslam for even higher prices than those paid by Sanders's straw buyers. LATTAS, Barr, Aslam, and others agreed to conceal from lenders the substantial fees that were being paid to Aslam, including payments intended to be used by Aslam for the straw buyers' down payments. LATTAS, Barr, Aslam, and others also agreed to conceal that Aslam was obtaining checks on behalf of the straw buyers that made it falsely appear that the down payments were coming from the straw buyers themselves. LATTAS further signed HUD-1 settlement statements that he and others knew were false and fraudulent.

As part of the scheme, LATTAS also made and caused fraudulent statements to be made in connection with Barr's own purchase of a condominium unit at Vision on State. Specifically, when Barr obtained a loan from Bank of America to purchase

4

a condominium unit in mid-May 2008, LATTAS helped Barr prepare fraudulent documents creating the appearance that: (1) Barr was purchasing the unit for $521,250 and was providing more than $112,000 to purchase the unit; and (2) 13th & State LLC was receiving more than $123,000 from the sale of the unit. In fact, the down payment was made by 13th & State, rather than Barr himself, and the unit's true sales price was approximately $412,000. As a result, 13th & State LLC received a net payment from the sale that was substantially less than $123,000.

LATTAS, Barr, Carroll, Budzik, Aslam, Sanders, and others caused buyers to fraudulently obtain approximately 67 mortgage loans to purchase condominium units at Vision on State, in a total amount of approximately $22,872,528. The lenders, including First Horizon Home Loans, a division of First Tennessee Bank, were insured by the Federal Deposit Insurance Corporation.

LATTAS acknowledges that the lenders and their successors suffered losses of approximately $13,045,319, as follows: AmTrust Bank ($193,800), Bank of America ($4,829,690), CitiMortgage ($386,765), Clearwater Mortgage ($205,000), Countrywide Savings Bank FSB ($156,300), Fannie Mae ($192,000), First Horizon Home Loans ($226,385), Freddie Mac ($1,991,578), Guaranteed Rate, Inc. ($1,064,451), HSBC Mortgage Corporation ($245,650), JPMorgan Chase Bank ($392,200), and Wells Fargo Bank ($3,161,500).

On or about November 9, 2007, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere, Barr, Sanders, and LATTAS knowingly

5

executed and attempted to execute the scheme by causing First Horizon Home Loans, a division of First Tennessee Bank, to fund a loan in the amount of approximately $330,385 for Buyers A & B to purchase 1255 S. State Street, Unit #813 in Chicago, Illinois, in violation of Title 18, United States Code, Section 1344.

7.     The foregoing facts are set forth solely to assist the Court in determining whether a factual basis exists for defendant's plea of guilty and criminal forfeiture, and are not intended to be a complete or comprehensive statement of all the facts within defendant's personal knowledge regarding the charged crimes and related conduct.

### Maximum Statutory Penalties

8.     Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

a.     A maximum sentence of 30 years' imprisonment. Pursuant to Title 18, United States Code, Section 3561, defendant may not be sentenced to a term of probation for this offense. This offense also carries a maximum fine of $1,000,000, or twice the gross gain or gross loss resulting from that offense, whichever is greater. Defendant further understands that the judge also may impose a term of supervised release of not more than five years.

b.     Defendant further understands that the Court must order restitution to the victims of the offense in an amount determined by the Court.

6

c.      In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty or restitution imposed.

## Sentencing Guidelines Calculations

9.      Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines. Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

10.     For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a.      **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2015 Guidelines Manual.

b.      **Offense Level Calculations**.

i.      The base offense level is 7, pursuant to Guideline § 2B1.1(a)(1).

ii.     Pursuant to Guideline § 2B1.1(b)(1)(K), the base offense level is increased by 20 levels because the loss for which defendant is responsible

was approximately $13,045,319, which is more than $9,500,000 and less than $20,000,000.

   iii.  Pursuant to Guideline § 2B1.1(b)(10)(C), the base offense level is increased by 2 levels because the offense involved sophisticated means.

   iv.  Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

   v.  In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

   c.  **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts

now known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I.

      d.      **Anticipated Advisory Sentencing Guidelines Range**. Therefore, based on the facts now known to the government, the anticipated offense level is 26, which, when combined with the anticipated criminal history category of I, results in an anticipated advisory sentencing guidelines range of 63 to 78 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose.

      e.      Defendant and his attorney and the government acknowledge that the above guidelines calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional guidelines provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

f.      Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the sentencing guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

## Cooperation

11.      Defendant agrees he will fully and truthfully cooperate in any matter in which he is called upon to cooperate by a representative of the United States Attorney's Office for the Northern District of Illinois. This cooperation shall include providing complete and truthful information in any investigation and pre-trial preparation and complete and truthful testimony in any criminal, civil, or administrative proceeding. Defendant agrees to the postponement of his sentencing until after the conclusion of his cooperation.

## Agreements Relating to Sentencing

12.      The parties will recommend whatever sentence they deem appropriate and will further recommend that the sentence be imposed concurrently with any

10

sentence imposed in the separate matter of *United States v. Robert Lattas, et al.*, 13 CR 463-2 (Darrah, J.).

13. It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

14. If, in its sole discretion, the government determines subsequent to defendant's sentencing in this case that defendant has provided substantial assistance, as described in Fed. R. Crim. P. 35(b)(2), which assistance has not been taken into account by the parties in fashioning the sentencing agreement in this case, and is not taken into account by the Court in imposing sentence, then the government will move for a reduction in his sentence pursuant to Fed. R. Crim. P. 35(b)(4). Defendant understands that it is solely within the government's discretion whether to move for a reduction in his sentence, and he agrees not to challenge the government's decision if it determines in its discretion that such a motion is not appropriate. Defendant also understands that should the government seek such a reduction as outlined above, it is solely within the Court's discretion to grant or reject such a request, and to determine the extent of any reduction.

15.     Regarding restitution, defendant acknowledges that the total amount of restitution owed to the following victims and their successors is $13,045,319, as follows:   AmTrust Bank ($193,800), Bank of America ($4,829,690), CitiMortgage ($386,765), Clearwater Mortgage ($205,000), Countrywide Savings Bank FSB ($156,300), Fannie Mae ($192,000), First Horizon Home Loans ($226,385), Freddie Mac ($1,991,578), Guaranteed Rate, Inc. ($1,064,451), HSBC Mortgage Corporation ($245,650), JPMorgan Chase Bank ($392,200), and Wells Fargo Bank ($3,161,500), minus any credit for funds repaid prior to sentencing, and that pursuant to Title 18, United States Code, Section 3663A, the Court must order defendant, together with any jointly liable co-defendants, to make full restitution in the amount outstanding at the time of sentencing.

16.     Restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing. Defendant acknowledges that pursuant to Title 18, United States Code, Section 3664(k), he is required to notify the Court and the United States Attorney's Office of any material change in economic circumstances that might affect his ability to pay restitution.

17.     Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

18.     Defendant agrees that the United States may enforce collection of any fine or restitution imposed in this case pursuant to Title 18, United States Code,

12

Sections 3572, 3613, and 3664(m), notwithstanding any payment schedule set by the Court.

19.     After sentence has been imposed on the count to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining counts of the indictment as to defendant.

### Forfeiture

20.     Defendant understands that by pleading guilty, he will subject to forfeiture to the United States all right, title, and interest that he has in any property constituting or derived from proceeds obtained, directly or indirectly, as a result of the offense.

21.     Defendant agrees to the entry of a personal money judgment in the amount of at least $291,234, which represents the total amount of proceeds traceable to the offense.     Defendant consents to the immediate entry of a preliminary order of forfeiture setting forth the amount of the personal money judgment he will be ordered to pay.

22.     Defendant admits that because the directly forfeitable property is no longer available for forfeiture as described in Title 21, United States Code, Section 853(p)(1), the United States is entitled to seek forfeiture of any other property of defendant, up to the value of the personal money judgment, as substitute assets pursuant to Title 21, United States Code, Section 853(p)(2).

13

23. Defendant understands that forfeiture shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon defendant in addition to the forfeiture judgment. In this case, however, the United States Attorney's Office will recommend to the Attorney General that any net proceeds derived from any forfeited assets be remitted or restored to eligible victims of the offense pursuant to Title 18, United States Code, Section 981(e), Title 28, Code of Federal Regulations, Part 9, and other applicable law.

24. Defendant agrees to waive all constitutional, statutory, and equitable challenges in any manner, including but not limited to direct appeal or a motion brought under Title 28, United States Code, Section 2255, to any forfeiture carried out in accordance with this agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. The waiver in this paragraph does not apply to a claim of involuntariness or ineffective assistance of counsel.

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

25. This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 14 CR 287-2.

26. This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or

release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

### Waiver of Rights

27. Defendant understands that by pleading guilty he surrenders certain rights, including the following:

a. **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

i. The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii. If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

15

iii.    If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

iv.    If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

v.    At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

vi.    At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

b.    At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be

16

drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

      c.    **Waiver of appellate rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial. Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal his conviction and the sentence imposed. Acknowledging this, defendant knowingly waives the right to appeal his conviction, any pre-trial rulings by the Court, and any part of the sentence (or the manner in which that sentence was determined), including any term of imprisonment and fine within the maximums provided by law, and including any order of restitution or forfeiture, in exchange for the concessions made by the United States in this Agreement. The waiver in this paragraph does not apply to a claim of involuntariness or ineffective assistance of counsel, nor does it prohibit defendant from seeking a reduction of sentence based directly on a change in the law that is applicable to defendant and that, prior to the filing of defendant's request for relief, has been expressly made retroactive by an Act of Congress, the Supreme Court, or the United States Sentencing Commission.

      d.    In exchange for the concessions made by the United States in this Agreement, defendant also agrees to waive all appellate issues in *United States v. Robert Lattas, et al.*, 13 CR 463 (Darrah, J.), including his conviction, any pre-trial rulings by the Court, and any any part of the sentence (or the manner in which

17

that sentence was determined), including any term of imprisonment and fine within the maximums provided by law, and including any order of restitution or forfeiture, in exchange for the concessions made by the United States in this Agreement. The waiver in this paragraph does not apply to a claim of involuntariness or ineffective assistance of counsel, nor does it prohibit defendant from seeking a reduction of sentence based directly on a change in the law that is applicable to defendant and that, prior to the filing of defendant's request for relief, has been expressly made retroactive by an Act of Congress, the Supreme Court, or the United States Sentencing Commission.

28.     Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

**Presentence Investigation Report/Post-Sentence Supervision**

29.     Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing, including the nature and extent of defendant's cooperation.

18

30.     Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

31.     For the purpose of monitoring defendant's compliance with his obligations to pay a fine and restitution during any term of supervised release to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Other Terms

32.    Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

33.    Defendant understands that pursuant to Title 12, United States Code, Sections 1785(d) and 1829, his conviction in this case will prohibit him from directly or indirectly participating in the affairs of any financial institution insured by the National Credit Union Share Insurance Fund or the Federal Deposit Insurance Corporation, except with the prior written consent of the National Credit Union Administration Board or the FDIC and, during the ten years following his conviction, the additional approval of this Court. Defendant further understands that if he knowingly violates this prohibition, he may be punished by imprisonment for up to five years, and a fine of up to $1,000,000 for each day the prohibition is violated.

34.    Defendant understands that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

## Conclusion

35.    Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

20

36.     Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

37.     Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

38.     Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

21

39.     Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: _2 / 5 / 2016_

_Zachary T. Fardon by JBP_     _Robert D. Lattas_

ZACHARY T. FARDON        ROBERT D. LATTAS
United States Attorney         Defendant

_Christopher R. McFadden_     _Edward M. Genson_

CHRISTOPHER R. MCFADDEN    EDWARD M. GENSON
Assistant U.S. Attorney         Attorney for Defendant

22